UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| PATRICIA ANN PARKER and<br>CHARLES O. SHEPHARD,<br>    Plaintiffs<br><br>v.<br><br>CARL GREGORY AUTOMOTIVE,<br>et al.,<br>    Defendants | )<br>)<br>)<br>)  **REPORT AND**<br>)  **RECOMMENDATION**<br>)<br>)  Case No. 1:13cv00060<br>)<br>)  By: Pamela Meade Sargent<br>)  United States Magistrate Judge |

This matter is before the undersigned on the Defendants' Motion For Summary Judgment, (Docket Item No. 39), ("Motion"). Although the pro se plaintiffs failed to respond to the Motion within the allotted time, and the court would be justified in dismissing the plaintiffs' claim for failure to prosecute, the undersigned will decide the Motion based on the defendants' evidence and the applicable law. Despite the defendants' request for oral argument, the court will dispense with the same and will decide the Motion based on the written submissions of the defendants. The Motion is before the undersigned magistrate judge by referral, pursuant to 28 U.S.C. § 636(b)(1)(B). Based on the arguments and representations presented, and for the reasons stated in this Report and Recommendation, the undersigned is of the opinion that the Motion should be granted. The undersigned also recommends the plaintiffs' claim be dismissed.

## I. Facts[1]

The plaintiffs, Patricia Ann Parker, ("Parker"), and Charles O. Shephard, ("Shephard"), are both residents of Meadowview, Virginia, and are proceeding pro se in this civil suit. The remaining defendants[2] in this case are Carl Gregory Automotive, ("Carl Gregory" or "the dealership"), and Gary Hudgins, ("Hudgins"). Carl Gregory is an automobile dealership located in Johnson City, Tennessee, of which Hudgins is the General Manager. The plaintiffs filed their Complaint on July 23, 2013, alleging that on June 28, 2013, they viewed a television advertisement for Carl Gregory, which stated that "everyone is approved" for financing and that "no matter what you are approved no matter what the credit problems you may have." (Docket Item No. 3, ("Complaint"), at 1). They allege that Shephard spoke by telephone with a salesperson for the dealership named Josh, who directed Shephard to complete a credit application, which he could obtain from the dealership's website. (Complaint at 1). The plaintiffs allege that, like the advertisement, Josh advised Shephard that "everyone is approved so come in and pick out the car of your choice." (Complaint at 1). Pursuant to an appointment made with Josh during that same telephone conversation, Shephard and Parker traveled to the dealership the week of July 2, 2013. (Complaint at 1). However, upon their arrival, Josh was busy with other customers, so they spoke with another salesperson. (Complaint at 1). Upon choosing the vehicle they wished to purchase, the salesperson informed the plaintiffs that he needed to run another credit check, which, according to the plaintiffs, was the seventh time that the

---

[1] For purposes of the disposition of this Motion, the facts as set forth herein are construed in the light most favorable to the plaintiffs, the nonmoving parties. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

[2] Jason Gregory was terminated as a defendant in this case by Order dated August 14, 2013. (Docket Item No. 14.)

dealership had run their credit. (Complaint at 2). Nonetheless, Shephard completed yet another credit application, and another credit check was run. (Complaint at 2). When the results came back, the plaintiffs were informed that there was nothing that the dealership could do for them, and they were unable to purchase the vehicle that they had chosen. (Complaint at 2).

Upon being denied financing, the plaintiffs asked to speak to a manager, who also informed them that financing could not be obtained. (Complaint at 2). The plaintiffs informed the manager of their belief that the dealership was not running a "true commercial" because the advertisement stated that everyone is approved for financing. (Complaint at 2). After calling Carl Gregory's corporate office, Shephard spoke with Mr. Gregory, who directed Shephard to call Hudgins with his concerns. (Complaint at 2). When Shephard spoke to Hudgins, he was again informed that nothing could be done given the plaintiffs' poor credit. (Complaint at 2). Shephard proceeded to inform Hudgins that he intended to file a lawsuit because Parker's credit had been further damaged due to repeated credit pulls and the false advertising of the company. (Complaint at 2-3).

In support of the Motion, the defendants have filed an affidavit of Hudgins. (Docket Item No. 39-1, ("Hudgins Affidavit")). In the affidavit, Hudgins stated that, as the General Manager of the dealership, he supervises the operations of the dealership, which includes the sales staff. (Hudgins Affidavit at 1). He stated that in early 2013, the dealership purchased some television and radio advertising as a routine part of its marketing plan. (Hudgins Affidavit at 1). According to Hudgins, in these advertisements, the dealership made the following statements: "We specialize in rebuilding credit for people with bad credit, slow credit or no credit … Our goal is 100% financing … Carl Gregory can help." (Hudgins Affidavit at

1). Hudgins stated that this statement was not a guarantee that the dealership could provide financing for anyone and that financing decisions depended upon a number of factors, the most important being a purchaser's credit score. (Hudgins Affidavit at 2). Hudgins stated that the plaintiffs came to the dealership in July 2013 intending to purchase a new vehicle. (Hudgins Affidavit at 2). However, according to Hudgins, Parker and Shephard had such poor credit scores, the dealership was unable to obtain financing for them. (Hudgins Affidavit at 2). He stated that a contributing factor to the difficulty in securing financing was that the plaintiffs were "underwater" on their trade-in vehicle. (Hudgins Affidavit at 2).

According to Hudgins, Carl Gregory does not own its own financing company, but must coordinate financing for its purchasers through a third-party entity. (Hudgins Affidavit at 2). Contrary to the plaintiffs' allegations, Hudgins stated that Parker's and Shephard's credit scores were pulled only once each. (Hudgins Affidavit at 2). According to Hudgins, when the dealership was unable to obtain financing for the plaintiffs to purchase a new vehicle, he suggested they should purchase a used vehicle, but they were not interested and declined. (Hudgins Affidavit at 2). Hudgins stated that the dealership ultimately was unable to sell the plaintiffs a car with which they would be satisfied, so, to compensate them for their trip from Virginia, he gave them a gas card. (Hudgins Affidavit at 2). Hudgins stated that any no point did he, the dealership or any staff member of the dealership promise the plaintiffs that they could get financing. (Hudgins Affidavit at 2). Hudgins stated that the dealership's advertisements merely express that they will do their best to coordinate financing for their purchasers. (Hudgins Affidavit at 2-3).

*II. Analysis*

With regard to a motion for summary judgment, the standard of review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and … the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most favorable to the plaintiffs on the defendants' Motion. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky.*, 93 F.3d 230, 233 (6th Cir. 1996).

First, this court is unsure of its subject matter jurisdiction to hear this case. While the plaintiffs frame the suit as a consumer credit/false advertising suit, they have referenced no federal statute in their Complaint. On the face of the Complaint, the plaintiffs state that they are residents of Virginia. They sue an

automobile dealership and its general manager, who, plaintiffs allege, conduct business in Tennessee. The Complaint does not, however, make any reference to the citizenship of the dealership or general manager. The defendants have, however, not raised the issue of subject matter jurisdiction, which leads the court to believe that diversity jurisdiction exists.

Assuming the court is proceeding under diversity jurisdiction, the *Erie*[3] doctrine, and its progeny, applies. Also, the *Erie* doctrine is not limited to cases in which federal jurisdiction is based on diversity of citizenship. *See* 32 AM. JUR. 2D *Fed. Cts.* § 332. As stated in 32 AM. JUR. 2D *Fed. Cts.* § 332, it is the source of the right, not the basis of federal jurisdiction, which determines the controlling law in federal court. Even in a federal question case, some substantive law issues may be governed by state, rather than federal, law. *See* 32 AM. JUR. 2D *Fed. Cts.* § 332. I find that such is the case here. What the plaintiffs allege in their Complaint is more correctly construed as a common law fraud claim against the defendants.[4] Such fraud claims are born from state law. That being the case, I find that application of the *Erie* doctrine is appropriate.

Since this court sits in Virginia, Virginia's choice of law rules apply. Under Virginia law, fraud, which is most properly characterized as sounding in tort, is governed by the law of the place of the wrong, or *lex loci delecti*. *See Lachman v. Pa. Greyhound Lines, Inc.*, 160 F.2d 496, 500 (4th Cir. 1947); *C.I.T. Corp. v. Guy*,

---

[3] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that federal courts sitting in diversity are to apply state substantive law and federal procedural law). Later, in *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487 (1941), the Court held that federal courts sitting in diversity must apply the conflicts of laws decisions of the state in which it sits.

[4] The court construes this claim to be one for actual fraud, as it is possible that a claim for "fraudulent misrepresentation" may not be a cause of action distinct from a claim of actual fraud in Virginia. *See Klaiber v. Freemason Assocs., Inc.*, 587 S.E.2d 555, 558 n.1 (Va. 2003).

195 S.E. 659, 663 (Va. 1938). The place of the "wrong" for purposes of *lex loci delecti* is defined as "the place where the last event necessary to make an actor liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986); *see also Terry v. June*, 2006 WL 1049526, at *1 (W.D. Va. Apr. 17, 2006); *Jordan v. Shaw Indus., Inc*, 1997 WL 734029, at *2 (4th Cir. Nov. 26, 1997). "When a person sustains a loss by fraud, the place of the wrong is where the loss is sustained, not where the fraudulent representations are made." *Jordan*, 1997 WL 734029, at *3 (quoting RESTATEMENT (FIRST) CONFLICT OF LAWS § 377(1934)). "The 'last act' necessary for a fraud claim is the reasonable reliance on the false representation which causes the injury." *Jordan*, 1997 WL 734029, at *3; *see also AvalonBay Cmtys, Inc. v. Willden*, 2009 WL 2431571, at *6 n.5 (E.D. Va. Aug. 7, 2009), *aff'd*, 392 F. App'x 209 (4th Cir. 2010) (applying Virginia law to claims, including fraud, where plaintiff reasonably relied on the fraudulent invoices in Virginia and cut checks in Virginia); *St. Paul Fire & Marine Ins. Co. v. Hoskins*, 2012 WL 748574, at *4 (W.D. Va. Mar. 7, 2012); *Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc.*, 472 F. Supp. 2d 740, 750 (E.D. Va. 2007) (holding, in a fraud and conspiracy case, that the law of the forum where the party allegedly defrauded is headquartered governs tort claims as such locale is both the place where such party relied on the false representations and where its loss was sustained); *Insteel Indus., Inc. v. Costanza Contracting Co., Inc.*, 276 F. Supp. 2d 479, 486-87 (E.D. Va. 2003) (applying North Carolina law to an overbilling fraud claim arising out of a construction project in Virginia because the false invoices were relied upon and paid out of plaintiff's headquarters in North Carolina).

All of this being the case, I find that the place of the wrong in this case is Virginia because that is where the plaintiffs claim that they viewed the allegedly

false television advertisements and allegedly reasonably relied upon them. Additionally, they further claim that they were informed by a salesperson for the dealership, during a telephone call, that they would be approved for financing. The plaintiffs were located in Virginia during this phone call, and they allegedly reasonably relied upon such misrepresentations by the salesperson. Thus, I find that this court must apply Virginia law to the plaintiffs' fraud claim against the defendants. In order to make an adequate fraud claim under Virginia law, a plaintiff must show by clear and convincing evidence that there was a false representation of material fact, made intentionally and knowingly with the intent to mislead, and relied upon by the party misled to his detriment. *See Beck v. Smith*, 538 S.E.2d 312, 315 (Va. 2000) (citing *Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (Va. 1984)). The plaintiffs allege that the material misrepresentation was the defendants' promise to obtain financing for the plaintiffs, regardless of their credit scores, so they could purchase a vehicle. For the following reasons, I find that the plaintiffs' argument fails.

First, the defendants disagree with the plaintiffs' contention that, in the television advertisement, they promised to secure financing for the plaintiffs, regardless of their credit scores. Instead, the defendants argue that the advertisement conveys nothing more than a promise to do their best to obtain such financing. However, the Virginia Supreme Court has held that promises are insufficient as a matter of law to support a claim for fraud. As a general rule, fraud must relate to a present or pre-existing fact and cannot ordinarily be predicated on unfulfilled promises or statements as to future events. *See Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008) (citing *Prospect Dev. Co., Inc. v. Bershader*, 515 S.E.2d 291, 297 (Va. 1999); *Tate v. Colony House Builders, Inc.*, 508 S.E.2d 597, 599 (Va. 1999); and *Patrick v. Summers*, 369 S.E.2d 162, 164

(Va. 1988)). Nevertheless, "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." *Supervalu*, 666 S.E.2d at 342 (citing *Richmond Metro Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 348 (Va. 1998); *Colonial Ford Truck Sales v. Schneider*, 325 S.E.2d 91, 94 (Va. 1985); *Blair Constr., Inc. v. Weatherford*, 485 S.E.2d 137, 139 (Va. 1997)).

In this case, the dealership has presented uncontradicted evidence that its advertisement stated, in relevant part, as follows: "Our goal is 100% financing …." The word "goal" is defined as "something that you are *trying* to do or achieve," or "the end toward which effort is directed." MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/goal (last visited Mar. 18, 2014). Therefore, I find that the statement in the advertisement cannot constitute a materially false representation because it is, as the defendants claim in their brief, nothing more than a promise to do their best to help potential buyers, such as the plaintiffs, obtain financing to purchase a vehicle. It is not a promise or guarantee to, in fact, obtain such financing. Furthermore, I find that it is not an exception to the general rule that a promise cannot form the basis for a fraud claim under Virginia law because there is no evidence that the statement is a promise to perform in the future *with no present intention to perform.* In fact, the evidence shows just the opposite, as evidenced by the defendants' efforts in pulling each plaintiff's credit and, later, by suggesting that the plaintiffs try to obtain financing for the purchase of a used vehicle instead of a new one. For all of these reasons, I find that the statements in the television advertisement do not constitute a false representation of material fact necessary to constitute a fraud claim under Virginia law.

In their Complaint, the plaintiffs also allege that Josh, the salesperson with whom Shephard spoke by telephone, stated that "everyone is approved so come in and pick out the car of your choice." Admittedly, this language is stronger than that used in the advertisement. While not affirmatively stating "you will be approved," it could reasonably be inferred from Josh's statement, especially when followed by the invitation to "come on in and pick out the car of your choice." However, even classifying Josh's statement as a promise that financing would, in fact, be secured for the plaintiffs, I find that this still was not a promise to do something in the future with no present intention to perform. There simply is no evidence of such. According to the plaintiffs, Josh requested that they complete a credit application, which could be obtained from Carl Gregory's website, and he scheduled an appointment to meet with them at the dealership. I find that these actions undermine any argument that there was no present intention to perform the future promise at the time it was made. Thus, the exception to the general rule that promises cannot form the basis of a fraud claim, does not apply.

Aside from the fact that the plaintiffs have failed to show that the defendants made a false representation of material fact, I also find that they have not shown any damages resulting from the alleged fraud. To sustain an action for fraud, the plaintiffs must prove damages, which may not be speculative or abstract. In *Klaiber*, 587 S.E.2d at 558, the Virginia Supreme Court held that, in order to prove damages for a fraud claim, the complaining party must show that his position is worse than it would have been had the alleged fraud not been committed.

Insofar as the plaintiffs are claiming damages because they were unable to obtain a new vehicle, I am not persuaded because they are in no worse position now than before viewing the television advertisement, speaking to the salesperson

by telephone, traveling to the dealership, being turned down for financing and traveling home without a new vehicle. More specifically, they did not have a new vehicle when they viewed the advertisement and spoke with the salesperson by telephone, and they do not have a new vehicle after the alleged fraud.

Similarly, if the plaintiffs are claiming that they have been damaged by the multiple "credit pulls," this argument also fails. The defendants have presented uncontradicted evidence that multiple credit checks were not performed. Furthermore, while the Complaint states that Parker's credit was damaged, it offers no factual support for this allegation. The court is no longer bound to accept mere conclusory statements contained in a Complaint without factual support. *See e.g. Asheroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). That being the case, I find that, even if the plaintiffs could show the requisite material false representation, they cannot show damages as a result thereof.

It is for all of the above-cited reasons that I recommend that the court grant the defendants' Motion and enter summary judgment in their favor. I further recommend that the court close this case and strike it from the docket.

### **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now submits the following, findings, conclusions and recommendations:

1. The plaintiffs have failed to show that the defendants made a false representation of material fact;

2.  The plaintiffs have failed to show damages resulting from their reliance on the alleged false representation of material fact;

3.  The plaintiffs have failed to show that the defendants' actions constituted fraud; and

4.  Granting summary judgment in favor of the defendants is appropriate because there are no genuine issues of material fact in dispute.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends the court grant summary judgment in the defendants' favor.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636 (b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in the matter to the

Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTER: March 18, 2014.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE